# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br><br>Ramon Vargas III, and<br>Luis E. Martinez-Olvera<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 5:12-mj- 4<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 2012 to the present__ in the county of __Iredell__ in the __Western__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846;<br>18 U.S.C. 1956(h); and<br>31 U.S.C. 5332. | Conspiracy to distribute and to possess with intent to distribute at least five (5) kilograms of cocaine, a Schedule II controlled substance; conspiracy to launder proceeds of drug trafficking; and knowing concealment of more than $10,000 in currency with the intent to evade a currency reporting requirement and attempted to transport that currency from the United States to Mexico. |

This criminal complaint is based on these facts:


☒ Continued on the attached sheet.

_____
*Complainant's signature*

W. Todd Elmore, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/27/2012

_____
*Judge's signature*

City and state: Charlotte, North Carolina

U.S. Magistrate Judge David S. Cayer
*Printed name and title*

# AFFIDAVIT

W. Todd Elmore, Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn and deposed, states as follows:

## INTRODUCTION

Your affiant is an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, 19, 21, 31 United States Code and other related offenses. The affiant has been employed as a federal agent since August 3, 1987 and has focused primarily on investigations involving large-scale narcotics organizations. Your affiant is currently assigned to a Narcotics Smuggling Group in the Charlotte, North Carolina HSI office.

This affidavit is submitted in support of a criminal complaint for Ramon Vargas III and Luis E. Martinez.

This affidavit contains information necessary to support probable cause for the criminal complaint. The information contained in this affidavit is not intended to include each and every fact and matter observed by or known to the United States.

Your affiant has participated in the investigation as related in this affidavit. As a result of the affiant's participation in this investigation and information provided by agents/officers from other HSI offices, and others, your affiant is familiar with aspects of this investigation.

## FACTS AND CIRCUMSTANCES

On July 27, 2012, at approximately 1:40 am, U. S Department of Homeland Security, Immigrations and Customs Enforcement, Homeland Security Investigations (HSI) Special Agents from Charlotte, NC, and Greenville, SC, along with other local law enforcement agencies, conducted a consent search of a tractor trailer at the Flying J Truck Stop, located at Exit 102 on Interstate 85 near Blacksburg, SC. The driver was identified as Ramon VARGAS III and the passenger as Luis E. MARTINEZ.

Consent to search was given by both subjects. After the consent was obtained, two separate canines were utilized for the initial search of the vehicle. Both canines gave positive alerts for the presence of narcotics in the passenger area of the cab. When officers searched the cab, they located three large bundles of U.S. currency (estimated to be $30,000) in MARTINEZ' personal luggage. MARTINEZ admitted the luggage was his but disavowed all knowledge of the currency located in the bag or the cab of the truck. Also located in MARTINEZ' luggage was an IPAD, and contained within the IPAD cover was a ledger. Based on my training and experience, having reviewed

countless drug ledgers over the course of my career, in my opinion, the ledger is a drug ledger annotating the distribution of 38 kilograms of cocaine. Officers also located a duffle bag in the rear sleeping area of the tractor which contained 49 bundles of U.S. Currency, estimated to be $570,000, based on the numeric markings on the bundles. In addition, a subsequent ion scan of a sample of the money bundles resulted in the identification of the presence of cocaine residue on the bundles. All of the seized currency was subsequently counted and determined to be approximately $604,750.

Subsequent to locating the bundles of currency, MARTINEZ was advised of his Miranda rights and agreed to answer questions without an attorney present. He was interviewed by HSI Special Agent Paul Criswell. The interview began at approximately 2:00 a.m. MARTINEZ stated that he was in Charlotte visiting a female named "Alicia." He called his nephew (VARGAS) and told VARGAS to pick him up at Northlake Mall and take him back to Texas. MARTINEZ denied knowing anything about the money in his personal luggage or anywhere else. When asked about the drug ledger, he stated that it was a record of dialysis. When asked when he last participated in any dialysis, he stated, "five years ago." When asked about the positive ion scan for cocaine on the money bundles, MARTINEZ requested an attorney and the interview was terminated.

Ramon VARGAS III was also interviewed, after he waived his Miranda rights, by HSI Special Agent W. Todd Elmore. The interview began at approximately 2:02 am. VARGAS stated that he picked up a load of honey extract in Statesville and then went to Charlotte to pick up his uncle, Luis MARTINEZ. VARGAS stated that he picked up MARTINEZ at Northlake Mall located on I-77 in Charlotte. VARGAS picked up MARTINEZ in the parking lot after a friend of MARTINEZ dropped him off.

When asked about the bag of money, VARGAS stated that an unknown Hispanic male approached VARGAS at a truck stop located on I-77 south of Statesville, NC and they had "small talk". The unknown Hispanic male asked VARGAS where he was headed and VARGAS informed him that he was going to Laredo, TX. The unknown Hispanic male asked VARGAS if he would transport a bag of money to Laredo, and he offered VARGAS a payment of $2,000 to transport the money for him. The unknown Hispanic male informed VARGAS that someone would meet VARGAS at a Church's Fried Chicken in Laredo. VARGAS agreed to transport the money. The unknown Hispanic male wrote down VARGAS' driver's license information and address. The unknown Hispanic male did not provide VARGAS with a telephone number. VARGAS stated that he assumed someone was following him to Laredo.

When asked if VARGAS knew where the money was derived from, VARGAS stated that he knew the money was "illicit" money. When asked about the three bundles found separate from the bulk bag of currency, VARGAS stated that he intended to steal those three bundles. VARGAS stated that Luis MARTINEZ did not know what was going on and MARTINEZ did not know that the money was in the truck.

VARGAS described the unknown Hispanic male as being in his late thirties, 5'5" to 5'6", 180 pounds, small build but chubby, gray hairs in his mustache, recessed hair line,

wearing jeans. VARGAS stated that he did not see what the unknown Hispanic male was driving. This interview was terminated at 2:50 am.

At 4:20 a.m., Special Agent Elmore approached VARGAS again and asked him about the positive ion scan for cocaine on the money bundles. VARGAS stated that the positive results "did not surprise" him.

VARGAS stated that he believed the money was ultimately going to Mexico. It was VARGAS' job to transport it to the border and he believed that the "guys" that would meet him at the border would transport it into Mexico. VARGAS stated that the legitimate load that was on the trailer was ultimately going to Mexico, but VARGAS would not be the one to transport it to Mexico.

This affiant reviewed the log book for the tractor trailer and the bill of lading for the current load in the trailer. The review indicated that during the evening hours of July 26, 2012, VARGAS was in the Statesville, North Ccarolina, area for approximately four hours. After leaving Statesville, VARGAS went to Charlotte, North Carolina, for a short period of time and then proceeded to South Carolina, where he was encountered by law enforcement. The bill of lading indicated that the legitimate load was picked up in Mooresville, North Carolina and was to be delivered to Mexico.

This affiant believes that MARTINEZ and VARGAS III are involved in a conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine, to launder proceeds of drug trafficking, and, with the intent to evade a currency reporting requirement, to knowingly conceal more than $10,000 in currency and attempt to transport that currency from the United States to Mexico.

W. TODD ELMORE
HSI Special Agent

*AUSA Dana Washington reviewed this Affidavit.*

Sworn to before me this 27th day of July 2012.

THE HONORABLE DAVID S. CAYER
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF NORTH CAROLINA